Baytree Condominium v. Clear Blue Specialty, Mr. Barr. Say the best for last, Your Honor. Good morning. My name is Chad Barr, and I have the pleasure of representing the appellant in this case, Baytree Condominium. We can have a week of oral argument without Florida insurance case. And this is clearly the hottest ticket in town. We're asking the court to reverse two summary judgment orders entered in favor of the appellee in this case. The first one concerns the appellant's right to appraisal, and the second one concerns the issue of late notice and prejudice. I'd like to start today's discussion regarding the summary judgment order regarding the elephant in the room, late notice and prejudice. We know the district court concluded that the claim was not timely reported. We don't dispute that. The issue then goes down to the issue of prejudice. And like any good summary judgment case, we've got to make sure that we're starting with the proper standard. And respectfully, I think this is where the district court tripped out of the gates. If we look at what the standard is in Florida, in order to be entitled to summary judgment as to the issue of prejudice, the record must conclusively foreclose the insured's ability to rebut the presumption of prejudice. Key words. Here's your problem. This is an issue of federal procedure. The standard for summary judgment is the federal rule of civil procedure and the case law interpreting it. And it is not whatever the Florida courts use for their own summary judgment purposes. The question is whether there's a genuine issue of material fact and the case law about that and under federal rule of civil procedure 56. And I don't look to Florida case law to tell me how to evaluate that standard. I might have confused the bench. What I'm talking about is what has to be demonstrated in order to be entitled to summary judgment. And that's what we're referring. And as you know, Florida follows the federal standard now with respect to summary judgment. What did you just read from? What did I just read from? You read a standard. Where was that from? Well, the standard comes from this court. Right. Where did you read from? You read from Florida. Florida says this or that. Well, I read from this court's decision in Gulfport, Gulf Point, excuse me, where it talks about what has to be demonstrated in order for there to be summary judgment, the insurer to be entitled to summary judgment under a prejudice case. And so what we're saying. What is the evidence in dispute? Let's get there. Well, the evidence in dispute starts with you have the affidavit of Mr. Manella, personally inspected the roof six months after the date of loss. He opined that the damage was consistent with an April hail and wind storm. There's a slew of other DCA cases which have said that where there's an expert testimony after a significant gap, after intervening storms, and after repairs, all of which happened here, that that alone is insufficient to establish or overcome the presumption of prejudice. And I'm looking at, just so we're all on the same page here, Perez, Hope, Perez, Hope, Navarro, Coral Tower, and Coral Towers. I'm having trouble reconciling just your expert's affidavit and the expert's testimony from your side with the situation that the third DCA has consistently found to be insufficient to overcome the rebuttal, the rebuttable presumption. Well, okay. So first of all, we have to buttress that against the fact that the fourth DCA has found the opposite, and even very recently in the Shapiro case. Now, to address your concern about repairs. I want to talk about the Shapiro case. You raise an interesting point about some tension between the fourth DCA and there, but let's start with the third DCA for right now. Okay. Do you agree with me that it's hard, that based on just what you presented, just what you said here are the affidavits of your experts, that that alone would be insufficient, at least in the third DCA? I don't agree, and the reason why is because, one, look at the repairs, first of all. The only evidence of repairs is you have Mr. Manello saying a shingle was taken initially so they could do a color match. That's it. The other experts that went and looked at the property, including the defendant's two experts, all said we didn't see any evidence of repairs. Your client specifically says repairs were done. But not when. But not when. But there's no evidence that repairs were done between the date that the storm happened. But at least there's some evidence of repairs. There also seems to be evidence of at least some intervening weather events, right? No, there's no evidence of that either. Did your property manager specifically state that she remembered there was some weather events that had happened between then and August? I would have to go back and see about that. And if that is the case, then that seems like we're really close to what the third DCA has said, is unreliable expert testimony to overcome the presumption, right? But that also bleeds into the Kelsey ruling striking paragraph 10. So show me where in the original report that the expert, Mr. Kelsey, stated or was disclosed that he was going to opine, A, of what the weather was like between February or between the hailstorm and then when a claim was filed, and, B, what his opinion actually would have been. Right. So he was disclosed as an expert with respect to whether that affected the property. It was. And whether there was a storm, which he opined there was. The rule requires specifically that not just you disclose the nature of the expert testimony, but you give a report of exactly what the opinion is. And the reason for that is simple, because when you get to deposition, you want everyone to be on notice of exactly what's at issue so that you can depose. So I guess my point is, or my question is, where in the original report did we have these opinions that were disclosed in the Kelsey report? Yeah. There was nothing in the original report saying that there was no intervening weather issue. The problem is that the issue of this late notice prejudice thing was developing as the case was going on. So they didn't plead it as an affirmative defense. Rule 37 is, this is an application of Rule 37. It isn't a pleading requirement. Rule 37 says once we agree that it's late, then it is incumbent upon you to show lack of prejudice or substantial justification. That's your burden, and it's not a pleading burden. It's a burden that you have to show. Well, I understand that. But when you're talking about what evidence you're going to present with respect to a claim, you can't anticipate everything. So as they're raising the issue of late notice, the first time they raised the issue of late notice in this case was in response to our motion for summary judgment. So then we supplemented the 26th disclosure, Rule 26. It's not an affirmative defense. Excuse me? It's not an affirmative defense. Well, I guess, I'm not saying that I disagree. I'm not even asking at this point that the court, you know, reverse with respect to the pleading deficiency. The policy required the policy holder to make prompt notice.  And all through the investigation, the insurer had said, we're reserving our rights on the lateness of this notice. It was your burden to establish that you had provided prompt notice. And when they raised this issue, you know, it was your burden to, you know, to go around the presumption of prejudice. I don't see where there's an affirmative defense. And again, I'm not saying that they necessarily had to. What I'm saying is, like, as the case develops, the issues come to the surface. They originally said in their reservation of rights letter, they said late notice. And then they abandoned it by saying, not only are we going to make a coverage determination, but also we agree to appraise this case. So they took affirmative actions that were inconsistent with the position that the claim was late reported. Because all they had to say was, we cannot determine where the summary judgment. So I'll call phase two summary judgment, the summary judgment, the one we've been talking about. Can you show me where in the summary judgment papers that you brought up the waiver issue? I don't have those with me. It's not there. In fact, the district court in a footnote specifically said, waiver is not an issue here. It wasn't brought up. And that was part of the basis for the district court's ruling. Waiver was certainly brought up on phase one on the appraisal side, but we're not talking about that at the moment. But on phase two, I just don't see where it was brought up. And where it's not, then we're just talking about whether there's a genuine issue of material fact on whether you met your burden to overcome the presumption. And I'm not bringing waiver into the argument with respect to count two, the second summary judgment. What I'm saying is that when the issue came up, we reacted. They updated the supplemental disclosure. They filed supplemental disclosures. And then in response to the summary judgment motion, they filed the affidavit of Mr. Kelsey, which had that extra paragraph, which the case law indicates that so long as it's within the scope of what he's been noticed to be produced as, that he can provide that information, which is what we did in this case. So I see my time's up. I can address whatever questions you have on rebuttal. Okay, Mr. Barr. Ms. Young? May it please the Court? I'm Julia Young here on behalf of Clear Blue Specialty Insurance Company. First of all, I'll address the supplemental opinion of Mr. Kelsey. His original expert report, which was properly and timely disclosed, addressed weather conditions on April 10th, 2021 and April 11th, 2021. Then in response to our motion for summary judgment, he issued a supplemental opinion that reviewing weather conditions across the span of 324 days and providing a new opinion that no other. Yes. So that clearly was beyond the scope of the original opinion and was properly stricken by the Court. Without the affidavit, and assuming I agree that it was not an abuse of discretion to strike that, was there evidence in your favor that suggested there were intervening weather events? Oh, absolutely. Yes. Clear Blue's corporate representative, Ingrid Barria, who's the property manager, testified that on August 7th, 2021, that an entire section of the roof covering of Building 90, there are four buildings on this property, was peeled back. And she said that that happened, she believed, during a storm on August 7th, 2021. And for the record, that was when Element Services Solutions first came out and tarped that roof. That was the first evidence in the record that any roof of that property was ever tarped. So far, because there was intervening weather events and because repairs have been made as a result of that, we're very close to those line of cases in the third DCA that I've talked about here. But let me mention what I think is a key distinction I want to ask you about. In each of those cases, every single one of them, I can go through them, but in every single one of them, the insurance company, in this case you, but the insurance company in each of those cases said that the lack of notice made a difference to them, and they weren't able to adjust the claim as a result. So, for example, in Hope, the citizens denied coverage for failure to give prompt notice of the hurricane damage, stating that because Mr. Hope waited nearly four years to make a claim, it was unable to attribute any damages to a covered loss. In Perez, citizens denied the claim in a letter stating that Ms. Perez's failure to timely report or claim prejudiced citizens' investigation to the point that it was unable to make a coverage determination. In Navarro, a sentence similar to Navarro, here, your experts, expert Gold, was asked, all right, and did anything prevent you or hinder you from determining the cause or extent of damages in this claim? Expert Gold answered, I mean, the time that elapsed between April of 21 and March of 22 could have resulted in fading of SPARTA marks, but other than that, no. And then she's followed up, were there any specific evidence of faded SPARTA marks here? And she says no. So, in other words, there was nothing that prejudiced her. Expert Wiseman also was asked, did anything hinder you from determining the extent or cost of covered repairs in this claim? And he answered, no. So, I guess my question is, is there not at least a dispute of fact about whether, in fact, the insurance company was hindered here? Because in all those other cases I mentioned, there was no dispute of fact. The insurance company was in fact hindered. Here, the experts for your client are saying they were not, in fact, hindered, and then you add on to the fact that they agreed of what the damages were, they agreed to pay an under-deductible amount, and they agreed to go to appraisal. You add all that together. Is there not a dispute of fact that overcomes the presumption of prejudice? No, Your Honor, I don't believe there's a dispute of fact. There remains a presumption of prejudice, and the burden is on Baytree to rebut that presumption. No, I just want to hear the four pieces of evidence in which they rebutted it. Why are those four pieces of evidence under Florida law not sufficient to rebut the presumption? Even where a carrier can make a coverage determination and deny coverage on other grounds, they can still then argue failure to give prompt notice as a defense. Yes, and that includes defense. There's a presumption of prejudice. We're past that. I agree with all of that. We're now in evidence that rebuts that. They have now shown through your own experts that there was no hindrance at all in determining causation and in determining extent of repairs, and, in fact, you adjusted the claim by agreeing to an under-deductible amount and had agreed at least at some point to appraise. How is not all of that evidence together enough to create a genuine issue of material fact to overcome the presumption that you were prejudiced by the failure for prompt notice? All right. Because, number one, Baytree never provided documentation of repairs. Its representative testified there were semi-permanent repairs to several of the buildings. She testified that there were many shingles missing from the roofs in the two days after the property. That would be a great argument for summary judgment on failure to show damages and failure to show or meet the evidentiary burden for them, but that's not what we're talking about with notice. What we're talking about with notice is were you hindered in some way from adjusting the claim? That's the question. That's the whole reason we have these presumptions, because if you didn't get noticed, the presumption is you were hindered in some way. But if you're not, if you're able to do your job, then what are we talking about here? But, Your Honor, I think they don't – when you're – there's a presumption of prejudice because if you don't – if you're unaware of the condition of that property in the immediate aftermath of the loss and you're inspecting it nine months later, you don't know how you're prejudiced. You don't know if you're prejudiced. All you know is – all our – all it's – Counsel, if your – if your expert witnesses had said exactly that, then I think that would be similar to the third DCA cases I went through. In other words, if your expert had said for the question were you hindered in any way, the answer was I have no idea because we just don't know what happened in those succeeding months. I understand that. But they were categorical that in no way was I hindered from determining extent or cost or causation for the damages. And so I understand what you're saying and it makes logical sense. That's why we have these rules and presumptions. But where there's evidence to overcome that, how do we not create a genuine issue of material fact for which a jury needs to make that call? Your Honor, I believe her testimony was in the context of her inspection of that property more than nine months later. And she was still able to identify ten shingles with damage consistent with wind. Agreed. So – The delay stopped her from being able to do her job. That's the point. Exactly. But, Your Honor, there's still – well, then we're sued for $1.2 million. So we found the covered damages were under-deductible. So to the extent that they're seeking more – We're not seeking more than that. We're talking about in those issues a precondition of filing a suit issue. It may be that when we get to a jury who has evidence showing there were only ten shingles that were problems and they're saying we need a whole new roof, that jury needs you. I have no doubt about that. But that's not – that's separate from what we're talking about here of whether they have met or at least there's a genuine issue of material fact on the precondition of suit that gets a discussion to the merits. All right. In order for there to be a genuine question of material fact, I believe the plaintiff would have to introduce some admissible evidence that tends to rebut the presumption of prejudice. I'll mention them again. One is expert gold. The other is expert watchman. The third is the fact that you sent a letter, your client sent a letter, stating that we agree there was damage. It's under the deductible amount. It's for about $3,000 or $4,000. And fourth, we agree that we can go to appraisal to be able to determine the dispute between us. Why are those four facts not sufficient? And let me just add one other wrinkle. Look at Shapiro. How is this case not very similar to the fourth ECA's decision in Shapiro? Your Honor, in Shapiro, the plaintiff's engineer explained exactly – they rebutted the presumption of prejudice. Because the plaintiff's engineer explained exactly how he connected the damage to Hurricane Irma rather than other storms. He said there was no heavy, dark rot deterioration of root decking and no dull or rounded edges at the cracks indicating they predated Irma. But the distinguishing factor in Shapiro is the admission by the insurer's investigator, quote, also presents an issue of fact concerning the ability of the insurer to overcome the presumption of prejudice. What happened there is the insurer's investigator told the plaintiff's expert. They went out to the property together. And the insurer's expert said, quote, that there was storm damage to the insurer's roof, damage from the relevant storm, the hurricane. In other words, the insurer admitted that there was damage. I don't believe that was the decisive factor in Shapiro. And I don't believe – I don't believe in Shapiro. The admission of that investigator's statement, quote, also presents an issue of material fact concerning the ability of the insured to overcome the presumption of prejudice. That's at page 288 of the opinion. Your Honor, I disagree that Baytree's expert in this case has offered similar testimony and evidence as the expert in Shapiro. You have both of your experts on deposition under oath stating that they were not hindered in any way from rendering an opinion at the extent, cause, and amount of damages. I mean, that's pretty damning. Ms. Young, let me ask you something about this. So as I understood it, though, Florida case law says that a conclusory statement by an engineer that, in his opinion, the late notice did not prejudice the insurer is not legally sufficient evidence required to overcome the presumption of prejudice. Yes. And these experts that we're talking about, Gold, Wiseman, is it Wiseman or Wiseman? Wiseman. Wiseman. And Manella and Smith's declarations, it's conceivable that they didn't know about the earlier damage and storms, right, nor about the later storms. Isn't that right? Yes, sir. And, therefore, their opinions were conclusory. What they said about adjusting the claim for this loss has to be conclusory in the sense that they're attributing it to the April loss without any basis of any knowledge about anything else. Isn't that right? Yes, sir. That's correct. And can I ask you a follow-up question on that? It's my understanding that your experts said that there was like a $2,000 worth of damage here, where they say that there were $2 million worth of damage. Or $1.2 million. Could you explain that discrepancy for me? Well, our expert, Ms. Gold, and Mr. Wiseman was the independent adjuster. Our causation expert was Engineer Gold. And, however, both those people inspected the property and identified only 10 shingles across three of the four buildings that had damage consistent with wind. They did not see any hail damage to any of the property. And then plaintiff's expert, Mr. Engineer Crockett, went in, and he personally inspected the property about two and a half years after the date of loss and determined that the roofs of all four buildings needed to be replaced and, further, that the interiors of various condominium units needed to be repaired. So, anyway, it rose to $1.2 million, based on Mr. Smith's estimate. When you asked the independent adjuster, when they were saying that they could do this work, even though it had been eight months, you know, the claim was delayed and being filed, they were saying that they could do the work and assess a $2,000 claim, something like that? Yes, and they could inspect that property on that date and determine what damages there were on that date, the date they inspected. They were not hindered in that inspection at all. But as far as relating it back to a loss that occurred more than nine months prior, they could not do that. Well, you know, if there were these earlier damages and if there was a later storm, then can you evaluate what the loss was only in April, or they were asked it in that way? No, sir. No. No. And they were, at the time of, we didn't become aware of the pre-coverage inception damages that were never told to Clear Blue during its underwriting survey and never reported to any insurer. So there had been ongoing roof leaks and repairs of roofs at these properties for the five years preceding policy inception. And the underwriter surveyor said that had she known about that, she would have downgraded the condition and she would have told the carrier, get a roofing professional to inspect these roofs before you issue the policy. So, I mean, that just exacerbated the prejudice against Clear Blue. I mean, incredibly. So nobody can relate this damage back to an April 11, 2021 storm event based on the passage of time. And we know there were repairs based on the corporate rep's deposition testimony after the date of loss, the alleged date of loss. We know there was an intervening loss in August of 2021. Complete with evidence about the earlier damage.  The leaking roof and shingles and all of that, right? Yes, sir. And I just want to add, you know, just without knowledge of how that property appeared on or around the date of loss, any conclusions about a lack of prejudice are a conclusory. Thank you. Thank you. Mr. Barr. Can I ask you to address, I mean, I'm sure you're about to do this, but just sort of as a more high-level matter, what is your burden to show that your late notice did not prejudice? You know, you're trying to prove a negative, right? You're trying to prove that it did not prejudice the insurer. How do you understand your burden to prove that negative? That goes back to what I was leading in with, is that they move for summary judgment. So they have to prove that the record conclusively forecloses my ability to rebut the presumption. Well, I don't want to mess it up with that. I'm just trying to figure out as a matter of substantive Florida law with this burden shifting, you know, it's your burden to prove a negative. How does one go about proving the negative? Proving the absence. I understand how someone could prove prejudice. I'm trying to figure out how you prove the absence. It's, you know, it's a fluid matter. We have to be, the record has to demonstrate that the jury could find that we rebutted the presumption. And the only way they're entitled to summary judgment is if they show that the record conclusively forecloses that. Talk about Shapiro. Shapiro is one where the Florida DCA said that it overcame. What facts were at issue there that overcame the presumption under Florida law? And that brings us, you know, where I was beginning with. Shapiro was issued in 2023. It's the most recent case regarding this issue. And in that case, the court first explained that the adjuster's affidavit claiming prejudice was unsupported. So same just like Ms. White's affidavit in this case, there's no support for it. The court then explained that the insured's engineer's affidavit created a question of factus to prejudice because the affidavit made it clear that the engineer's opinion was that the storm caused the damage to the roof. That's what Mr. Crockett and Mr. Manello said in this case. And essentially the engineer's opinion was that the insured could still observe the damage from the hurricane even years after the storm. And I think what's important in that case is those inspections didn't even begin until three years later. So we're talking about an inspection that happened six months later. And I have a little bit of issue with this whole conversation about damage and subsequent damage and repairs because what we have is we have a record where Ms. Berea is testifying from what she believes happened some three years ago, but we also have four individuals who got up on that roof and said there was no evidence of any repairs to the roof. And they got up on the roof nine months, a year, a year and a half after the storm, and they said we didn't see any evidence of repairs. So it's not clear when these subsequent damages or repairs took place. What is, what we do see in the record is affirmatively Mr. Manello saying one or two shingles were removed. There's no other. There was a roof leak in Building 110 on July 9th, 2019, right? Yes, which predated the storm, yes. Yes, and there were all kinds of damages that predated the storm, right? They brought in all kinds of notes about what was done to, what was, yes, damages. Shingles, stucco damage, roof repairs, and a roof leak. There are all those things that predated April. Isn't that right? Yes. Why isn't that enough? No storms. There's no storms. And then we have the pre-policy inspection report stating that the roof was in general favorable condition. So getting to your point, Judge, when you're talking about the difference between the damage, $2,000 versus 1.2, I don't, it doesn't, I went through this and it just boggled my mind how someone could get on the roof and say there's hail splatter everywhere. And I don't know about in Georgia, but hail splatter is a big deal. It destroys our cars in Florida. How do you miss that? So how do you get up on the roof as an insurance adjuster and say there's absolutely no hail up here at all? So we're not dealing with a situation where it was like there was some hail here, there was more hail here, and there was more hail later. We're dealing with a situation of was there hail or not? That's like the surface level question. And they're saying there's no hail. So there's not a question of we couldn't figure out what the cause of loss is. They're saying we didn't see any damage. The only damage we saw was the 10 shingles and it was $2,000. So there's a breakdown there and it has nothing to do with the time between when the storm happened and when the claim was reported or even when they were able to get up on the roof. So Shapiro, Judge Luck, the decision that you were a part of in Gulf Point, it all is exactly what we have in this particular case here. The experts agree, all four of them. They all agree that there was no prejudice with respect to the coverage determination in this case. And they went so far as to agree that there was damage and that they would want to appraise, which obviously we didn't get to that point, but it's been brief. So is it your position that in order for the insurance company to win one of these at summary judgment, their expert has to say something like, I am incapable of assessing the damage because of the absence of time? It makes it more clear. I'm not saying that there's – yes, but I'm not saying that – I don't believe that there is a cut and dry. There's not a template to these things because every single one of these cases are different. And you've seen enough of these forward insurance cases to know that they all have their own buzz. So what we're talking about here is a situation where no one has claimed prejudice, and we have experts who say there's damage from both sides, and we have experts who say that there's repairs that need to be done. The issue comes down to the extent. So does that answer your question? All right. Thank you. Thank you. We're going to be in recess until tomorrow. All rise.